UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN ANTOINE JONES,<br><br>Defendant. | CASE NO. CR16-0202JLR<br><br>ORDER DENYING MOTION TO REOPEN DETENTION HEARING |

## I. INTRODUCTION

Before the court is Defendant Kevin Antoine Jones's 18 U.S.C. § 3142(f) motion to reopen his detention hearing and for release pending the disposition of this case. (*See* Mot. (Dkt. # 110).) Plaintiff United States of America ("the Government") opposes Mr. Jones's motion. (*See* Resp. (Dkt. # 113).) The court has reviewed the motion, the Government's response, the parties' submissions in support of and in opposition to the

//

//

ORDER - 1

motion, and the applicable law. Being fully advised,[1] the court DENIES Mr. Jones's motion.

## II. BACKGROUND

**A.     Mr. Jones's Criminal History**

In March 2007, Mr. Jones was convicted of promoting prostitution in the second degree when he was 18 years old. (Am. PSR (Dkt. ## 30, 114) (sealed) ¶ 25.) The 16-year-old victim told police that, after Mr. Jones picked her up in Longview, Washington, and drove her to Seattle, he had coerced her into prostitution by refusing to let her return to her family until she earned $25,000.00. (*Id.*)

In 2008, Mr. Jones was convicted of unlawful possession of a firearm after officers responded to gunfire and found Mr. Jones in possession of a loaded pistol. (*Id.* ¶ 28.) At the time of this offense, Mr. Jones was 19 years old.

//

//

//

---

[1] Mr. Jones requests oral argument on his motion. (*See* Mot. at 1 (stating in the caption, "Telephonic Argument Requested")); *see also* Local Rules W.D. Wash. CrR 12(b)(12) ("A party desiring oral argument shall so indicate by typing ORAL ARGUMENT REQUESTED in the caption of the motion or responsive brief."). However, the parties have fully briefed the issues, and oral argument would not assist the court's decisional process. Accordingly, the court DENIES Mr. Jones's request. *See id.* ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."); *see also United States v. Hearns*, No. 1:20-CR-110, 2020 WL 1493747, *3 (N.D. Ohio Mar. 27, 2020) ("[W]hile the Bail Reform Act is silent about whether a defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing."); *United States v. McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *1 (W.D. Wash. Apr. 15, 2020) (concluding that the defendant's motion under 18 U.S.C. § 3142(f) may be denied without a hearing).

In 2011, Mr. Jones was convicted in the Western District of Washington of multiple counts relating to a bank robbery conspiracy. (*Id.* ¶ 31.) He was sentenced to 48 months of imprisonment. (*Id.*)

In 2016, while on federal supervised release for the convictions related to the bank robbery conspiracy, the Government indicted Mr. Jones with one count of being a felon in possession of ammunition. (*See* Indictment (Dkt. # 1).) Mr. Jones pleaded guilty, and in 2017, the court sentenced him to 30 months of imprisonment and a three-year term of supervision, which he is currently serving. (*See* Plea Agreement (Dkt. # 20); R&R on Guilty Plea (Dkt. # 21); Order of Acceptance of Guilty Plea (Dkt. # 22); Am. Judgment (Dkt. # 43).)

Mr. Jones has three failures to appear from other cases, including a failure to appear to serve a ten-day sentence. (Am. PSR ¶¶ 24, 30.)

**B.    Mr. Jones's Conduct While on Supervision**

On June 4, 2019, the court issued a summons based on allegations that Mr. Jones had entered a casino, assaulted a dealer, and stolen money. (*See* Violations Memo. (Dkt. # 55) (sealed); Summons (Dkt. # 56) (sealed).) Mr. Jones reached a deferred prosecution agreement with the state prosecutor. (Def. Mem. (Dkt. # 62) at 2.) At the October 15, 2019, disposition hearing on Mr. Jones's supervised release violation, the court modified the terms of supervision to include an anger management evaluation and treatment. (10/15/19 Min. Entry (Dkt. # 65); 10/15/19 Order (Dkt. # 66); Hr. Trans. (Dkt. # 83).) At the same hearing, the court warned Mr. Jones that he needed to stay out of trouble. (*See* Hr. Trans. at 5.)

Three weeks later, on November 4, 2019, the court issued a warrant based on allegations that, on the previous day, Mr. Jones had assaulted his girlfriend twice, in public, at the 13 Coins restaurant in Seatac, Washington. (*See* 11/4/19 Pet. for Warrant (Dkt. # 67).) On January 28, 2020, Magistrate Judge Mary Alice Theiler issued a report and recommendation concluding, based on a preponderance of the evidence, that Mr. Jones committed the crime of assault in the third degree against his girlfriend, and recommending that he be found guilty of violating the terms of his supervised release. (1/28/20 R&R (Dkt. # 96) (sealed) at 5-6.) Pending a final determination, the court remanded Mr. Jones to custody. (*See id.* at 6.) Defendant filed objections to Magistrate Judge Theiler's report and recommendation. (*See* Obj. (Dkt. # 101).) The court's determination concerning Mr. Jones's objections to Magistrate Judge Theiler's report and recommendation is presently pending. (*See generally* Dkt.)

**C.     Mr. Jones' Medical History**

Mr. Jones is 32 years old. He was diagnosed with bronchitis in 2015 and 2019. (*See* Jones Exs. A, B (Dkt. # 111).) Mr. Jones argues that this medical history places him at greater risk if he contracts Coronavirus Disease 2019 ("COVID-19") while in detention at the Federal Detention Center ("FDC"). (*See* Mot. at 6.) In his motion, however, he acknowledges that "no one has tested positive or died at the FDC" of COVID-19 (*see id.* at 16), and there is no evidence to the contrary presently before the court (*see generally* Dkt.). Mr. Jones nevertheless argues that the COVID-19 pandemic "drastically alters th[e] calculus" relied upon by the court to detain him and that his medical history, which was not relevant at the time of his detention, "is now particularly relevant." (Mot. at 2-3.)

The court now considers Mr. Jones's motion.

### III.   ANALYSIS

A detention hearing may be reopened if the court finds that "information exists that was not known to the movant at the time of the hearing" and that such information has "a material bearing" on the issues of whether the defendant poses a flight risk or whether the defendant poses danger to the community, or both. *See* 18 U.S.C. § 3142(f). Mr. Jones argues that information relating to the COVID-19 pandemic was not available to the court when he was detained and therefore the court did not consider Mr. Jones's underlying health issues and the risks those underlying health issues pose to him should an outbreak of COVID-19 occur at the FDC. (*See generally* Mot.)

In recent weeks, federal district courts across the country have considered large numbers of motions to reopen detention hearings under 18 U.S.C. § 3142(f) predicated on the current COVID-19 public health crisis. *See United States v. McKnight*, No. CR18-16TSZ, 2020 WL 1872412, at *1 (W.D. Wash. Apr. 15, 2020) (collecting numerous cases in which the pretrial detainee unsuccessfully relied on the current COVID-19 crisis). The majority of these decisions "make clear . . . that COVID-19 does not support the reopening of a detention hearing because 'the governing legal standard "is *not* . . . the harms that [a defendant's] incarceration [might] cause (however substantial),'" but rather '"the danger" that "would be posed *by the person's release*."'" *Id.* (quoting *United States v. Calvert*, No. 19-40068-03-HLT, 2020 WL 1847754, at *2 (D. Kan. Apr. 13, 2020) (quoting *United States v. Lee*, No. 19-CR-298, 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020), and 18 U.S.C. § 3142(g)(4)). Most courts to

consider the issue have found that the COVID-19 pandemic does not in and of itself raise a change in circumstance that has material bearing on whether there are conditions of release for the defendant that will reasonably assure the safety of the community or the appearance of the defendant. *See id.* at *2 (citing *United States v. Dodd*, No. 20-CR-0016 (NEB/HB), 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020)); *see also United States v. Flores-Lopez*, No. CR19-203RSM, 2020 WL 1862599, at *2 (W.D. Wash. Apr. 14, 2020) (stating that "the Court agrees with the Government that the current COVID-19 pandemic alone was not a valid basis to reopen the issue of detention" under 18 U.S.C. § 3142(f)).

Mr. Jones's motion for reopening his detention hearing is founded on speculation regarding the risk that he will contract COVID-19 while he is at the FDC and speculation regarding the impact any such infection would have on his health. (*See generally* Mot.) Indeed, as noted above, he admits that there is presently no COVID-19 at the FDC. (*See id.* at 16.) The court does not minimize the risks inherent in the COVID-19 pandemic and the particular challenges faced by detention facilities in light of this public health crisis. However, the COVID-19 pandemic does not have a "material bearing" on the factors the court considers here—whether the defendant poses a flight risk and whether the defendant poses danger to the community. *See* 18 U.S.C. § 3142(f). Accordingly, the court concludes that the existence of the pandemic and any particular vulnerabilities of Mr. Jones thereto do not justify an alteration in the original decision to detain him.[2]

---

[2] The court declines to conclude that it could never consider the COVID-19 public health crisis as relevant to its consideration of community safety under 18 U.S.C. § 3142(f). However,

Further, as detailed above, Mr. Jones has a history of violence toward and abuse of women, which dates back to his 2007 conviction for promoting prostitution in the second degree, and was most recently manifest in his November 4, 2019, assault on his girlfriend. *See supra* §§ II.A., II.B. In addition, his other criminal history also demonstrates a tendency to violence. Following shortly on the heels of his conviction for promoting prostitution, he was convicted of unlawful possession of a firearm. *See id.* § II.A. His first federal conviction related to a bank robbery conspiracy. *See id.* While he was on supervision for that crime, he was caught with ammunition leading to his 2017 conviction in the present case. *Id.* § II.B. While on supervision for his 2017 conviction, he (1) entered into a deferred prosecution after allegedly assaulting a dealer at a casino, and (2) assaulted his girlfriend twice in public. *See id.*

Moreover, as is evident in the history related above, Mr. Jones is not deterred by federal supervision from committing violent crimes; and if the court were to release Mr. Jones now, his supervision would be less robust due to the COVID-19 pandemic. The assigned probation officer could not meet with Mr. Jones in person and drug testing is suspended. (*See* Resp. at 5.) Contrary to Mr. Jones's assertions, there is nothing in the record to reassure the court that if released Mr. Jones will not continue to ignore the

---

Mr. Jones fails to make that case here—particularly in light of the current conditions at the FDC. The court notes that there is no evidence of an outbreak of COVID-19 at the FDC, *see* https://www.bop.gov/coronavirus/ (visited May 1, 2020), and that the facility has implemented robust Bureau of Prison measures to guard against such an outbreak and to contain one should it occur, *see* https://www.bop.gov/resources/news/20200313_covid-19.jsp (visited May 1, 2020). *See King v. Cty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018) ("[W]e take judicial notice of the undisputed and publicly available information displayed on government websites."). Further, the facility is far from overcrowded at only 68% of capacity. (*See* Mot. at 6 ("[The FDC] currently houses 684 people with a capacity for 1000.").)

ORDER - 7

conditions placed on his release and this court's orders.  Mr. Jones asserts that he could reside with his sister at her apartment in Renton, Washington.  (Mot. at 2.)  But he was living with his sister at the time of his current violations.  (*See id.*)  Accordingly, the court cannot conclude that this living arrangement would "reasonably assure . . . the safety of . . . the community."  *See* 18 U.S.C. § 3142(f).  Indeed, the court concludes that releasing Mr. Jones would imperil his girlfriend and other civilian witnesses who testified at the evidentiary hearing.

In sum, Mr. Jones's history of failing to abide by the conditions of his supervision together with the nature of those violations and his extensive criminal history support the court's original decision to detain and him, and the court denies his motion.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Mr. Jones's motion to reopen his detention hearing under 18 U.S.C. § 3142(f).

Dated this 1st day of May, 2020.

JAMES L. ROBART
United States District Judge